The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, Oyez, Oyez, Oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Council. We are here to hear the case of 21-1346, Roe v. United States. We're ready to hear from the appellant. Thank you, Your Honor. May it please the Court. I would like to reserve five minutes for rebuttal. Before last Wednesday, we thought it was beyond question that a party to a lawsuit cannot select a judge for their own case. Very few conflicts of interest principles are more basic than that. Appellee's briefing admits that officials of the administrative office and the judicial conference participated in selecting the judges in this case. The district court judge and the panel in this appeal were selected by defendants without Roe's knowledge or consent. That creates an intolerable appearance of partiality. And as a result, the judgment entered by the district court comes under a serious disqualifying cloud. I'm curious how we get to the district court decision being under challenge if I thought what we were looking at under these motions that have been filed and responses is the selection of this panel. I think that this selection of this panel is the issue on which the partial disclosures would most reveal information. However, it is clear from the briefing of the appellees that the same process was used or a similar one for the district court judge. And they do not deny that the AO and the judicial conference participated in selecting judges at both levels. They simply refrain from disclosing the rest of the documents that would be relevant to the district court inter-circuit assignment. Was this raised by you below or before to challenge the selection of the district court judge? In the district court, we had no reason to assume that conflicts of interest would have been a problem, mainly because the information was not disclosed to us. This is on the appellees to disclose the information that there might be a problem with conflict of interest. We presumed in good faith, as the law requires Roe to do, that officials were operating with integrity and that they would have affirmatively avoided this direct and very blatant conflict of interest in the selecting of judges. Clearly, we didn't have reason to think that defendants would be selecting the district court judge. How would you have either the district court judge or this panel selected if we can't have anybody from the administrative staff work on the recently that involved recusal of all of the Fourth Circuit judges? The judges, the inter-circuit assignment was simply made wholesale to the Third Circuit. And then the Third Circuit used its own internal assignment procedures to assign the judges to the case. Who makes that decision? Well, there are certainly, it could be that the Fourth Circuit makes the decision to assign the case to a different circuit, or the AO can in a ministerial fashion decide that some judge, some circuit can decide the case. Or in the end, it's the statutory duty of the Chief Justice of the United States to engage in that assignment. But you've said he's disqualified too. We have not said that he is disqualified and we do not believe that the Chief Justice is disqualified, namely because under the statute, he is obligated to do this inter-circuit assignment. And he would be doing so under his statutory duty as provided by Congress. He changed the judicial conference and you said anybody on the judicial conference is disqualified. We said that anyone acting on behalf of the judicial conference was disqualified. He would not be acting under the judicial conference when he is acting under his statutory duty under the statute. And in that situation also, Judge Malloy, I would also suggest something like the rule of necessity would in fact apply because he is the person that the statute specifically designates and there is no other person. Certainly the AO and the judicial conference are not required in any fashion by any statute to participate in the inter-circuit assignment process. And so there's no sense in which if they don't participate, there's nobody left to participate. Well, you say that you don't question the impartiality of this panel. So how does this motion have any relevance to the merits of Roe's case? We think that the appearance of partiality is just as important. And so therefore, the appearance that arises from the fact that the defendants chose the judges at the district court level and here is enough of an appearance of partiality. It's a terrible appearance. And we don't need to argue that the actual judges even knew or were in any way biased or that any of the judges, any of the officials who participated were actually biased. The actual bias is not at issue here. The appearance of partiality, which really casts a terrible cloud over the entire proceedings is what we're concerned about. And under due process doctrine and under the statute 455, it is the appearance and the reasonableness of being able to question the partiality because of the appearance. And that is what we are here for. The government in its response says, and I quote, the selection was made by a committee staffer and was neither directed nor influenced by any of the named defendants. But why isn't that sufficient? I do not think that's sufficient under just mountains of conflict of interest cases that show that the fact that a person specifically is not a named party or does not have a direct stake does not make the conflict of interest any less severe if that person is part of the organization. And specifically, the staffer is unnamed. We do not know who the staffer is. I believe the police could reveal who the staffer is, but the staffer could be somebody who reports directly to a person who should have been recused. And so therefore, I don't really think that's satisfactory. I don't think any of the cases on conflict of interest would consider that satisfactory. They serve an organization that is directly being sued. The AO is sued for its actions. In this case, the judicial conference is sued for the policy, which is being challenged in this case. And it is very clear that officials of both institutions would be serving people and entities that have a direct interest in the outcome of this case. That would be true for a coal company and its CEO or any of its officers. And it would be true for the AO and the judicial conference. I noticed you cite that coal executive case, which I guess is quite well known. Do you have any case precisely on point for this situation? Well, fortunately, Judge Gilman, I think that the situation is extraordinary and doesn't usually occur, where you have a defendant selecting their own judges and also where the entities being sued are part of the judicial branch. We have, for example, Paul v. Small Business Administration, the Fifth Circuit, where you have the idea that even if a law clerk has a conflict of interest, the judge doesn't even know about, the conflict is imputed to the judge because of the appearance of partiality, regardless of whether it affects the judge's decision. And similarly, in the D.C. Circuit of Al-Nashiri, you've got the idea that it's the appearance of partiality and not the actual reality of partiality that can matter for the purposes of 455. So the bottom line, if I understand your argument correctly, is that you basically want this panel disqualified. We think that the disqualification of this panel doesn't even need to be reached because it's so clear that the district court judgment must be vacated. And we think for the limited purpose of vacating this judgment that clearly has been tainted by the selection of the judge, by the defendants, this panel can rule and say that that must be vacated and a new judge must be assigned, not having anything to do with the defendant's participation. And we must just acknowledge what has happened here. So we don't think that the disqualification of the panel is something that even needs to be reached simply because it's so clear. On page 10 of this reply I just read this morning, you say that the participation of the appellees, quote, rendered illegitimate. Any judgment that could be entered in this case, both in the district court and on appeal. Now, if you say that, that means even if we on the merits decide to reverse the district court and send it, but that would be illegitimate too. Is that what you're saying? I guess what I, yes, what I'm saying is that any judgment in substance would be clouded by the fact that the origin of the conflict of interest and the appearance of partiality originates with the district court. However, we do think that just saying that the district court has issued an opinion that clearly is under the cloud of partiality and therefore must be vacated, that would be the best course for this panel, mainly because it's very clear that even if another panel were appointed to sit on this case, that would be the outcome. And we do favor judicial economy and not delaying a decision that is so clear. And so, but in order to, in reaching the actual merits of this case, I do think that it would be very, it would be very worrisome in terms of the legitimacy of that decision. You had reserved your balance? Yes. Yes, Your Honor. Thank you, counsel. Thank you. Thomas Byron. Thank you, Your Honor. May it please the court, Thomas Byron from the Department of Justice here on behalf of the government. The defendants in this case want to make a couple things clear. First, as you know, we've taken no position on this motion or the two previous  requests. We submitted a response that addressed the arguments plaintiffs made, and we're here to answer the court's questions. I want to make a couple of points at the outset, if I may, Your Honor. First of all, litigation counsel, including both Department of Justice counsel, as well as counsel within the administrative office of the General, Office of the General Counsel, had no knowledge of the panel before the disclosure by this court on November the 1st of last year. Secondly, the defendants who have been named in this case had no involvement in the selection of any of the judges in this panel or below. The selection process was routine. It followed the ordinary process established by the guidelines that were approved by the Chief Justice of the United States, and the selection was not affected by the merits. That's important to understand, and is based on our discussions with the personnel at the administrative office who routinely make these recommendations in consultation with the Chair of the Intercircuitous Assignment Committee. Excuse me, Your Honor. Finally, Your Honor, as Judge Moy's question highlighted, the plaintiff's theory of a conflict of interest would utterly disable the entire process of selecting judges for the Judicial Conference. And also, it would even disable the entire administrative structure, because the AO staff, after all, supports the Judicial Conference in all of its efforts, oversee and govern the judicial branch. Budgeting, space, real estate, physical security, and the like are all part of the responsibility of the administrative office. And just, Judge Briscoe, if I may, to your question about whether issues concerning selection of the district judge were raised earlier, our understanding is that they were not raised earlier, and that there was no suggestion of a question of impartiality. And in fact, the plaintiff here knew that as of April 2020, shortly after the designation assignment order was made for the district judge, excuse me, Your Honor, that the administrative office of U.S. Courts was involved in the selection process, because the cover letter accompanying that designation order was entered on the docket in the district court, and indeed was attached to the plaintiff's motion that's the subject of this argument now. So the plaintiffs have been on notice about that, and the involvement of any particular AO official or judicial conference official wouldn't make any difference in the plaintiff's theory of conflict of interest. And finally, Your Honor, I just want to emphasize that the plaintiff's naming of the administrative office of the judicial conference, with respect to the underlying claims in this case, have nothing to do with the selection of judges for the committee on entire judicial administrative support structure. By naming the AO in the judicial conference would disable the internal administrative operations of the federal courts, and wouldn't be inappropriate as a means of giving a particular litigant the ability to create disruption in that jurisdiction. Thank you, Judge Briscoe. The administrative office in general, are they alleged to be part of the underlying claims in the complaint? How are they involved specifically, if at all? Yes, Judge Briscoe. So I'll leave to plaintiff's counsel to explain the details of the complaint, but it is certainly true that the administrative office and the director who's been sued in her official capacity, or his official capacity originally substituted for the current director, Judge Moskov, have been named with respect to the involvement of the AO in the establishment of the EDR plan, and in the processing, according to plaintiff's allegations, of the particular complaint in the Fourth Circuit EDR plan, Your Honor. That's correct. Thank you. I got a question. You know, in your response, you say the committee staff consults a roster of judges who have expressed a willingness to serve on panels outside of their circuit. The staffer then contacts judges on that roster. All right, but how did that staffer make the decision to pick the three of us, as opposed to, I don't know, you've got 50, 100, I don't know how many judges have expressed a willingness to serve on a circuit. Judge Gilman, my understanding is that it was based on an assessment by the staffer who is familiar with, generally, with the caseload of many of the judges who have indicated willingness to serve on recusal panels. And remember, the available pool of judges who can serve on, who have expressed a willingness to serve on recusal panels is actually quite small. It also relies on judges who come from circuits whose caseload permits assignment to other circuits. There are some circuits whose caseload is so overwhelming that their judges have been requested by the chief judge not to sit by designation and assignment. And so the pool is actually quite small, Judge Gilman. I don't know the specific number, but my understanding is that the staffer is generally aware and reaches out to several judges to ask if they would have the availability during the relevant time period for the anticipated appeal and the willingness to serve during that period. And that, again, is based just on the staff's understanding of the judge's availability. It has nothing to do with the merits of the claims in the case and nothing to do with the parties in the case. Well, you know, I guess, I guess, are there any other documents other than what you've disclosed? In other words, are there further documents as to how this panel was selected beyond what you've already revealed? Not that we're aware of, Judge Gilman. No. I was going to say, it seems like you have the Certificate of Necessity signed by Chief Judge Gregory. You have the letter from the AO assistant to the Chief Justice. And then you have the Chief Justice's designations. And then you have the letters to the clerks signed by this Anne McKenna. Is there anything else you're aware of? No, Your Honor. That's correct. And in fact, I think it's important to emphasize that the plaintiff's argument would require the defendants to prove a negative, right? That there was no involvement of anyone improper, that there was no consideration of the merits, the claims, the parties, et cetera. That's impossible to do. It could only really be done, presumably, by, you know, some kind of testimony of the people involved. And after all, that kind of, you know, in a court of appeals generally, or in this context specifically. What about, I'm just curious, Ms. Gerson has suggested, well, the Fourth Circuit just designate the Third Circuit to pick the panel. In a case, why didn't it do that? Judge Gilman, I'm not familiar with the case Professor Gerson is referring to, but my clear understanding of the statutory authority in sections 294, 295, 291 requires the Chief Justice to designate a judge to exercise jurisdiction in another circuit. And that's clear from cases like Wren and Fradd and Miropol. And there's really no dispute about that question. So I think what plaintiff here is contending is by the disqualification of the entire administrative office and judicial conference officials and staff, the Chief Justice would have to exercise this authority himself. And again, I think some of the colloquy with plaintiff's counsel demonstrated that the Chief Justice's role as presiding officer of the judicial conference would itself potentially raise questions under plaintiff's very broad theory about conflicts of interest. We don't think there's any basis to believe that there's a conflict of interest by the Chief Justice, the judicial conference, or the administrative office staff and officials who handle these routine inter-circuit assignments. And there's no reason to believe that there is any appearance of impropriety or partiality or bias here. Do you have any case on point that I gather Ms. Gerson was not able to say anything directly on point? Do you have anything directly on point in the government's favor? Judge Gilman, so we are not aware of any other case where a plaintiff has named as a defendant the administrative office of U.S. courts and the judicial conference. That's, I guess, the only relevant universe of cases. There may well have been such cases. And if there were, and if there were a recusal panel identified, my understanding is that it would have been handled through the routine process of the administrative office. But no, Your Honor, I don't have a case. Can I just circle back to one point plaintiff made in the motion here, and indeed in the earlier motions too. It's the idea that in Section 295's provision that designation and assignment shall be filed with the clerks and entered on the minutes of the courts from and to which made. The idea that that somehow requires disclosure on the docket of a particular case. That's not what the statute says, and it can't be what the statute means. Because after all, there is no case pending in the lending court. After all, the 6th, 8th, and 10th circuits here couldn't enter these designation and assignment orders on any particular case docket. What the statute means by minutes of the courts is the court's internal records. And it's also true, of course, that some courts do enter designation orders on the docket of a particular case, but other courts don't, Your Honor. And the Fourth Circuit is consistent with its practice of not disclosing members of the panel until the day of argument, of not entering designation orders on the docket of a particular case when there's a recusal panel or a visiting judge. That is not in conflict with Section 295, and it's not in conflict with any questions about appearance of an improprietor or disqualification requirements. It's simply not true that the statute requires the kinds of disclosure that plaintiff has sought to compel here. Nevertheless, in the context of this extraordinary litigation, we have made more disclosures than otherwise would be appropriate or necessary. And Judge Gilman, just to complete the thought, if I may, we are not aware of any other records that might be relevant to the selection of this panel. And for that reason, we think the plaintiff's motion is essentially moot at this point and certainly doesn't warrant any further order or relief. What do you say in response to the relief sought that we vacate the district court ruling? Judge Fisco, as I mentioned a moment ago, plaintiffs have been aware of the involvement of the administrative office and the selection of the district judge since April of 2020. And they've never before raised a question about the propriety of that judge sitting and rendering judgment in this case. It's inappropriate now to seek that relief. And after all, there's no reason to believe that the district judge here was in any way partial or biased, or even that there was an appearance of bias by the district judge. The only question they've raised is whether the administrative office staff and the judicial conference officials should have been precluded from undertaking the routine administrative process. Right, and that's really the appearance of impropriety, the appearance of bias that's asserted both in the selection of the district court and this panel. It's the appearance. Yes, Judge Fisco, but I think that in light of the specific claims that have been made here, which again have nothing to do with the Inter-Circuit Assignment Committee, or the AO staff that supports it, there is no reason to believe there's an appearance of bias or partiality here. If there were, of course, then the same selection process of this panel would have to be considered as well. We don't think there is any reason for disqualification, but if the court believes that there is an appearance of impropriety, presumably the court can recuse itself and require the selection of a new panel. Again, we don't think that's required here, but the plaintiff's theory certainly doesn't support the relief requested concern. Do you think that our hearing on the merits in this case should be postponed until we have ruled on this matter? Judge Fisco, we don't have a position on that question. We believe it's appropriate for the court to make its own determination about that question. Thank you. Thank you, Your Honor. If there are no further questions, I appreciate the opportunity. Does the panel have any further questions? I do not. Thank you. Thank you. Thank you, Your Honor. We are a bit mystified by the police arguments. For example, the idea that we knew that the AO was involved in the selection process of Judge Young, that is not the case. The cover letter that was disclosed said that it was the Chief Justice's designation, but that does not suggest that the AO official selected the judge. That is a notice of designation, but that is not notice of how judges were selected. Roe assumed from the cover letter only the ministerial administrative role that the AO would have played, not a substantive selection role of the judge. What is the difference between those two, the administrative role and the selection? I make it sound like this is a predetermined, I want A, B, and C on this panel, or I want this specific judge. Do you have evidence of that, this selection word that you use? There is a difference between selecting the specific judge to serve on the panel, whether it's done with any kind of intent to bias the proceeding or not. There is a selection being made, and then there is this sort of administrative role of saying, Chief Judge, Chief Justice, here is the designation that has been made. Perhaps that selection has been made by other people other than the person who's signing the letter, but I do not agree with AO's letterhead that that means that Roe had reason to think that AO officials were involved in selecting the judge, because she would have assumed that they would not, as a police, as defendants in the case, been involved in selecting the judge. They would have accused themselves from that role. But the letter came from the AO, as I understand it. Is that right? The letter came from the AO to the Chief Justice. It doesn't say that the AO or the Judicial Conference assigned the judges. It just says, these are the designations. So, it's your thought that the Chief Justice of the United States sits in his office and determines which judge will sit on cases. Our position is that the Chief Justice ultimately has responsibility for that. Ultimate responsibility, but it is he and he alone who acts in the selection. Is that your point? He may, but in the ordinary case, there are over 200 inter-circuit assignments a year. Very few of them, if any, would involve the defendants being the very people who the guidelines would say are supposed to participate in selecting. It uses the word select. So, that... I'm looking at the docket here and it says, Order, Administrative Office of the Course, Designation and Assignment of Honorable William G. Young for service in another district, Western District of North Carolina, etc. Wouldn't that at least put you on inquiry notice that the Administrative Office had some role in the designation and assignment? If you're that concerned about the AO's role, shouldn't you make some investigation at that point? The point is, Judge, that we were not... We didn't have reason to be concerned about this conflict of interest until this appeal, when we learned that possibly the defendants had known about the assignment of this panel for six months while we did not. That was a blatant unfairness and different treatment of both parties. That is what put us on notice about a potential conflict of interest. At the district court level, we presumed in good faith that officials were just operating with integrity and we wouldn't have had reason. There was no notice about conflict of interest from that cover letter simply because we were presuming the integrity of these officials, that they would not have countenanced such a direct conflict of interest. I think this was not on Jane Roe to just be super suspicious at that point about conflict of interest. It was only after we learned that the defendants may have known the identity of the panel for six months while we did not, because they were involved in... If counsel didn't know, what difference... How could that prejudice grow? I think that... Counsel are the ones who would be preparing the case on the merits, not the executive director or the chief judge of the Fourth Circuit. I think that if there are cases that say that there's that kind of difference between counsel and the actual litigants, then perhaps, but we are not aware of that. We do know that the appellees and the defendants were aware, and the litigation counsel may not have been aware, but there were other counsel. They clearly used the word litigation counsel instead of counsel, and there may have been other counsel who were aware. I'm out of time. I just want to ask you this. If you had prevailed in the district court, would you be up here still saying there's a conflict of interest? Or is it only because you lost? Well, in general, Your Honor, I believe that the duty to the client would mean that you wouldn't argue against the interest of the client once the judgment was actually entered in favor of the client. Are you arguing that they briefed the case differently because they knew who the panel was? That it was somehow tailored to the three of us? I mean, I'm having trouble finding or logical prejudice that you suffered by Chief Judge Gregory and the circuit executive knowing who the panel members were. Your Honor, I appreciate that, and we have no reason to think that this particular panel is biased. We are basically saying the appearance of this panel having been selected, and this panel having been selected by the defendants who knew for six months, all of that together creates an appearance that this litigation involved unequal treatment of the parties in a case where the defendants participated in selecting the judges. All of that doesn't look good, and it looks like it undermines the judicial integrity of this proceeding, and I think that that is an untenable way to proceed for the legitimacy of this proceeding and for the legitimacy of any judgment by this court. And this is by no fault of this panel, but it exists anyway, and because the appearance of justice is important and that is essential, we do think that ruling further and going into the substance of the merits would be untenable for this court. Do you have any reason to believe that there are documents? I mean, you've asked for documents. Mr. Bryan says there aren't any. What documents do you think might be out there that they're not disclosing? Thank you so much for asking that. I think that Mr. Bryan says that there aren't other documents. However, there are district court records that they've held back. Aside from the designation order and cover letters that were filed, we don't have any records from the district court that would include at a minimum the certificate of necessity, the consent to assignment form, the memorandum with the whether the AO director Duff, a named defendant in the case, participated in the interstate circuit assignment process. All of those documents, I think, would, at a minimum, need to be disclosed if this court is considering locator of the district court records. Appellate records, we still do not have the consent to assignment forms on appeal. And then they mentioned internal correspondence and memoranda pertaining to identification, selection, and recommendation of the judges of this panel. The idea that is quite alarming that the defendants deliberated over the selection and recommendation of judges to hear their own case. These documents pertaining to conflict of interest are not subject to privilege. And therefore, I think there you're making sort of an assumption. And I think that was stated hypothetically that if there were any deliberations and that would be privileged, it didn't say that there were such documents. I think you're making an inference is really not there. I do not read their brief that way, but perhaps you are correct. To the extent that there are correspondences and memoranda, hypothetically, those should be disclosed. And because it was the appellees who actually named those kinds of correspondences and memoranda in their briefing, that is why I mentioned it today. There's also, additionally, the record of Fourth Circuit recusal. The defendants state that the Fourth Circuit's judges recused themselves, but they did not disclose the records of the recusal in either the district court or on appeal. And the guidelines state that the chief judge was required to notify the chair of the Inter-Circuit Assignments Committee of the recusal prior to the selection of visiting judges. So there is a record of that. Thank you. Does the government have any response to the comments that have been made? She's gone over four minutes. I want to be fair and give you an opportunity to respond. Thank you, Your Honor. And I realize it's unusual for appellees to have additional time at this stage. So we'd be happy to respond to any questions the court has. I would note that, of course, the panel members, pursuant to the statutory requirements and the guidelines, did submit consent forms. So presumably those would be, you know, forms that are included. The court's questions were accurate in assessing that we're not aware of any memoranda or other forms involved in the process of selection of this panel. But it's also true that, you know, this is not a discovery proceeding. We have not undertaken the kind of process that one would in district court and discovery on the merits of litigation. And we don't think it's appropriate to take those steps at this stage of the case. With respect to the involvement of the administrative office in the process, either below or on appeal, the guidelines themselves are clear about who is involved in the process and the plaintiff's motion included those guidelines and indicated an awareness of the process. So it should be no surprise to anyone that the AO staff, the Judicial Committee on Inter-Circuit Assignments, the Chief Judge of the Circuit, the Circuit Executive, and the Chief Justice of the United States all play a role in that process. And of course, the Director of the AO as well. Again, that's all public notice. Thank you, Your Honor. Thank you, counsel. Anything further? For the appellant? Anything further from the appellant? I will just say that the reference to the ordinary process is inapposite in a case where the ordinary process usually doesn't involve the defendants being the actual people who are doing this election. This is an unordinary situation. And therefore, if you just followed routines, then conflict of interest would never be a problem because you would just ignore the conflict and just do what was routine. And what we are saying is this was not the ordinary case. And therefore, the defendants who were involved in the process should have recused themselves from participating in the selection of judges. Thank you. Thank you both for your arguments this morning. They've been very helpful. This motion is under submission. Thank you. Thank you. This honorable court stands adjourned. Seen and die. God save the United States and this honorable court.
judges: Mary Beck Briscoe, Ronald Lee Gilman, Michael J. Melloy